Brett E. Lewis (*Pro Hac Vice Application Forthcoming*)
Roberto Ledesma (*Pro Hac Vice Application Forthcoming*)
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: Brett@iLawco.com & Roberto@iLawco.com

*Attorneys for Christopher Britt*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Britt/Priviley LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Citadel LLC and its related entity CE TM Holdings LLC,<br><br>　　　　Defendant. | No.<br><br>**COMPLAINT** |

## NATURE OF THE ACTION

1. This action seeks declaratory relief pursuant to 15 U.S.C. § 1114(2)(D)(v) to establish that Plaintiff Christopher Britt/Priviley LLC's (together, "Britt" or "Plaintiff") registration and use of the domain name <CitadelAir.com> (hereinafter the "Disputed Domain") is not unlawful under the Anticybersquatting Consumer Protection Act ("ACPA") and its use of "CitadelAir" is non-infringing.

## THE PARTIES

1

2. Plaintiff Britt is a U.S. citizen with an address at 15 Great Kame, Plymouth, Massachusetts 02360.

3. Upon information and belief, Defendant Citadel LLC and its related entity CE TM Holdings LLC (together, "Citadel" or "Defendant") is a Delaware limited liability company with an address at 131 S. Dearborn St., Chicago, Illinois 60603.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1114(2)(D)(v), and 28 U.S.C. § 2201 that Plaintiff's acquisition and use of the Disputed Domain is not unlawful under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).

5. This Court has personal jurisdiction over Defendant as a result of Defendant's initiation of an administrative proceeding against the Disputed Domain pursuant to the Uniform Domain Name Resolution Policy ("UDRP").

6. Venue is proper in this District under 28 U.S.C. § 1391 (b)(2). A substantial part of the property that is subject of this action is situated in this District. Moreover, venue is proper in this district due to Defendant's voluntary submission to this Court's jurisdiction when Defendant filed a complaint with the National Arbitration Forum (Forum) concerning Plaintiff's registration of the Disputed Domain.

7. The Disputed Domain has its situs in this District within the meaning of 15 U.S.C. § 1125(d)(2)(C). The registrar for the Disputed Domain is GODADDY, which is not only headquartered in this District, but upon information and belief also has additional business locations in this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

8. Defendant Citadel is an American multinational hedge fund and financial services company. It is one of the largest hedge funds in the world and its billionaire founder/CEO Kenneth Griffin has been listed as the 45th richest person in the U.S. See https://en.wikipedia.org/wiki/Kenneth_C._Griffin.

9. Plaintiff Britt closely follows the finance sector, and has been an active member of various investment communities and finance forums on Twitter and other online platforms for years. In early 2021, Citadel received public scrutiny and extensive media exposure over its involvement in the GameStop trading controversy. Britt was, and still is, enraged by the social injustice taking place in the retail trading environment. It was at that point that Britt realized he wanted to create a "meme" or parody outlet to ridicule Citadel and its billionaire CEO while simultaneously exposing truths or facts in the GameStop scandal, as well as other newsworthy matters in the financial industry.

10. Prior to registering the <CitadelAir.com> domain name on May 14, 2021, Britt created a parody account on Twitter under the handle "@CitadelAir." The Twitter account posts from the perspective of Citadel's CEO Kenneth Griffin's personal pilot, hence the choice of the wording "Citadel" plus "Air." The parody perspective is reinforced by the profile description at the top of the Twitter page, which reads: "Citadel Air helps meet the luxury travel needs of asset managers, banks, broker-dealers, hedge funds, government agencies, but we mostly just fly Kenny" -- with images of luxury private airplanes bearing Complainant's logo, as shown here:



11. This same imagery and references to piloting or various flight services ("flight history" and "live flight tracking") appear on the website at the Domain Name, as shown here:



12. Britt took his first flying lesson in grade school, and has a pilot's license.

13. Britt's Twitter account quickly gained a following -- in less than 6 months, the account amassed over 5,000 followers. The "CitadelAir" Twitter account links directly to the disputed <CitadelAir.com> domain name, which as noted was only recently registered in May 2021. Citadel has attempted to have Twitter takedown the "CitadelAir" account twice in a relatively short period of time, and both times Twitter reinstated the account within 24 hours.

14. After exhausting its options with Twitter's takedown policy, Citadel filed the underlying UDRP complaint in a further effort to silence Britt's speech. This is simply a case of a multi-billion dollar company trying to silence a private citizen who is critical of its operations and pokes fun at its CEO's extravagant lifestyle.

15. Britt chose the domain name <CitadelAir.com> because it playfully references the target of its parody ("Citadel") and incorporates the word "Air" in a humorous manner to ridicule the excesses of billionaire CEOs in corporate America, specifically Citadel's CEO Ken Griffin. As shown in the above images, Britt does not in any way suggest a direct connection with Citadel, or any sponsorship or affiliation.

16. Importantly, the Disputed Domain was acquired less than 6 months before the underlying UDRP complaint was filed, and Britt's website is not yet fully developed. However, it has placeholder information and links directly to Britt's Twitter account -- currently the primary outlet for Britt's criticism. It is obvious that Britt's

"CitadelAir" Twitter account is a parody, as it consists of a stream of memes and jokes with information to help followers better understand what Britt believes to be truth/facts rather than reliable information from questionable sources or "fake" news.

17. There has never been an instance in which a user or consumer confused Britt's use of "CitadelAir" with Citadel, or believed that Britt was actually operating an airline, and that Britt's memes were actually posted by the pilot of Citadel's CEO Ken Griffin.

18. Citadel has not provided any evidence supporting consumer confusion, and none exists. Its position is merely based on unsupported assertions by its counsel.

19. Conversely, Britt's intent to use the Disputed Domain in a parody is supported by actual evidence in the form of a popular Twitter account, with funny memes and tweets. And, to be clear -- Britt has not received nor sought any commercial gain from his use and registration of the Disputed Domain.

20. Britt is merely using the Disputed Domain for genuine criticism and to parody Citadel, its billionaire CEO and corporate America.

21. Britt's inclusion of the arbitrary modifier "air" creates a domain name that is legally different from the CITADEL trademark, parodies the CITADEL name and services, and is being used for legitimate noncommercial criticism in a fair use manner.

22. A quick perusal of Britt's <CitadelAir.com> website and related social media account confirms as much. It is clear, based on the context of Britt's use, that this is a parody and/or legitimate noncommercial criticism.

23. On October 18, 2021, Citadel submitted a complaint with the Forum, initiated an administrative proceeding against Britt's registration of the Disputed Domain, and sought an order to transfer the ownership rights of the Disputed Domain to Citadel, in

violation of Britt's First Amendment and free speech right to ridicule and criticize Defendant's CITADEL trademark.

24. The UDRP proceeding, *Citadel LLC and its related entity CE TM Holdings LLC v. Christopher Britt / Priviley LLC*, Claim Number: FA2110001968516 (the "Proceeding") was decided by a three member Forum panel on November 29, 2021. A majority of the Panel issued a decision directing transfer of the Disputed Domain to Citadel.

25. The Presiding Panelist in the Proceeding was a European citizen and attorney who failed to acknowledge and address the unique issues presented in the Proceeding, which involved First Amendment and free speech rights under the U.S. Constitution.

26. The Respondent in the Proceeding has ten business days to commence an action in this district to stop the transfer of the Disputed Domain from taking place.

27. Despite the fact that Citadel had agreed to submit to the jurisdiction of the courts of this District, to decide *de novo* whether Britt's acquisition of the Disputed Domain violates Citadel's rights, under the Lanham Act, 15 U.S.C. 1125(d), and whether Britt has a right to criticize and ridicule Citadel and its CEO, the Panel did not apply U.S. law in reaching its decision.

28. In filing the Proceeding, Citadel *chose* to submit to the jurisdiction of this Court, and to have the laws of the United States, as interpreted and applied by the Ninth Circuit and the courts in this District, apply to the parties' dispute.

29. Yet, Citadel completely disregarded the laws of this Circuit in filing the Proceeding.

30. The Panel in the Proceeding wrongly determined that Britt's Twitter account was irrelevant to the cybersquatting claim. Despite reaching that erroneous conclusion, on information and belief, Citadel has now taken the decision in the Proceeding to Twitter as grounds to suspend Britt's CitadelAir Twitter account.

31. On December 8, 2021, Britt's @CitadelAir Twitter account was suspended.

32. On information and belief, Britt's Twitter account was suspended due to Citadel's takedown request based on a wrongly decided UDRP decision that involved legal issues unique to U.S. law that were ignored by a foreign attorney serving as the presiding panelist.

33. Under U.S. law a claim for cybersquatting cannot stand if the domain name was registered and used for protected free speech purposes. Furthermore, the trademark holder must establish that the domain name was registered with a bad faith intent to profit from a known trademark.

34. The Plaintiff here registered and used the Disputed Domain to parody and criticize the Defendant, which is his right under the First Amendment. There is no bad faith intent to profit in this case and the Defendant will not be able to prove otherwise.

35. Upon information and belief, Defendant was aware that its UDRP Complaint needed to meet the standards – not of the UDRP, but of the Lanham Act and the *U.S. Constitution*. It was not enough to craft a complaint that could prevail in an administrative dispute proceeding that may be decided by panelists outside of the United States who may not understand or be qualified to interpret U.S. law.

36. At no point did Plaintiff offer the Disputed Domain for sale.

37. At no point has Plaintiff offered any domain name for sale.

38. The underlying UDRP action was filed to silence a dissenting voice in an obvious parody -- Citadel had no basis to support the UDRP Proceeding.

39. On information and belief, Citadel has now used the UDRP Proceeding to further silence Britt by having the @CitadelAir Twitter account suspended.

40. For the above reasons, Plaintiff seeks a declaration that the Disputed Domain is rightfully owned by Plaintiff and that Plaintiff's use of "CitadelAir" does not infringe or dilute any claimed trademark rights that Defendant may claim in any "Citadel" trademark for its financial services or any goods or services.

41. In accordance with the Internet Corporation for Assigned Names and Numbers (ICANN) Policy, Plaintiff provided notice to Defendant that a lawsuit would be commenced against it concerning the Disputed Domain name within a ten-day period.

## COUNT ONE
## Declaration Under Anticybersquatting Consumer Protection Act

42. Plaintiff realleges and incorporates paragraphs 1-41 above.

43. As stated above, Plaintiff registered and used the Disputed Domain to parody and criticize Defendant and its billionaire CEO.

44. As such, Plaintiff's registration of the Disputed Domain violates no right of Defendant's under the Anticybersquatting Consumer Protection Act, 15 U.S.C. 1125(d).

45. In registering the Disputed Domain, Plaintiff did not have a bad faith intent, as provided in 15 U.S.C. § 1125(d)(1)(A)(i), to profit from any mark owned by

Defendant. Plaintiff's intent was to parody and criticize Defendant and its CEO, which is clearly evident in Plaintiff's Twitter account of the same name.

46. In registering the Disputed Domain, Plaintiff did not have the intent, as provided in 15 U.S.C. § 1125(d)(1)(B), to divert consumers from Defendant's online location to a site accessible under the Disputer Domain that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site. It is obvious that the Disputed Domain is a parody. Plaintiff does not offer actual flight services, nor does the Defendant. As such there is not even a potential for any likelihood of consumer confusion.

47. In registering the Disputed Domain, and at no time since registration, has Plaintiff offered to transfer, sell, or otherwise assign "CitadelAir.com" to Defendant or any third party for financial gain without having used, or having an intent to use, the Disputed Domain in the bona fide offering of any goods or services, nor is there prior conduct by Plaintiff indicating a pattern of such conduct.

48. Plaintiff has not registered or acquired multiple domain names that he knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties.

49. Plaintiff has not registered, trafficked in, or used a domain name that at the time the Disputed Domain was registered in 2021, was identical or confusingly similar to any mark alleged to be owned by Defendant.

50. Plaintiff believed and had reasonable grounds to believe that his registration of the Disputed Domain was lawful.

51. As required by 15 U.S.C. § 1114(2)(D), Plaintiff has given notice to Defendant of his intent to file an action to establish that Plaintiff's acquisition and use of the Disputed Domain is not unlawful under the ACPA.

## COUNT TWO
### Declaratory Judgment

52. Plaintiff realleges and incorporates paragraphs 1-51, above.

53. A dispute exists between Plaintiff and Defendant concerning Plaintiff's right to acquire and use the Disputed Domain, and Plaintiff's right to use the wording "CitadelAir" to parody and criticize the Defendant in a non-infringing manner. As a consequence of the dispute, an actual and justiciable controversy exists between Plaintiff and Defendant.

54. Plaintiff uses the "Citadel" mark in a fair use and non-infringing manner to criticize and ridicule Citadel and its billionaire CEO.

55. After the underlying UDRP decision was issued but before the 10 day period to prevent transfer of the Disputed Domain had lapsed, Defendant submitted a complaint to Twitter claiming that Britt's use of the account "@CitadelAir" violates Defendant's trademark rights and Twitter's rules.

56. Plaintiff's @CitadelAir Twitter account is used for an obvious parody in furtherance of his free speech rights.

57. Defendant's complaint to Twitter has caused the suspension of the @CitadelAir account, with Twitter citing a violation of its rules, thus damaging Plaintiff's reputation and prohibiting him from exercising his right to free speech.

58. As a matter of law, Plaintiff's use of "CitadelAir" to parody and criticize Defendant and its CEO does not infringe or dilute any claimed trademark rights that Defendant may claim in any "Citadel" trademark for its financial services and/or any other product or service.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment:

(a) Declaring that Plaintiff's acquisition and use of the domain name <CitadelAir.com> is not unlawful under the ACPA, 15 U.S.C. § 1125(d);

(b) Declaring that Plaintiff's acquisition and use of the domain name <CitadelAir.com> does not constitute a registration with the bad faith intent to profit from any mark alleged to be owned by Defendant under the ACPA, 15 U.S.C. § 1125(d);

(c) Declaring that Plaintiff is not required to transfer the domain name <CitadelAir.com> to Defendant;

(d) Declaring that the Registrar GODADDY.COM LLC shall not transfer the registration for the domain name <CitadelAir.com> to Defendant;

(e) Declaring that Plaintiff's use of "CitadelAir" to criticize and parody Citadel and its CEO does not infringe or dilute any trademark rights claimed by Defendant in the name and mark "Citadel";

(f) Declaring that Twitter must remove Plaintiff's @CitadelAir Twitter account from suspension or any termination;

(g) For such other and further relief as the Court shall deem appropriate.

Dated: December 8, 2021

LEWIS & LIN, LLC

By: /s/ Roberto Ledesma
Brett E. Lewis (*pro hac vice forthcoming*)
Roberto Ledesma (*pro hac vice forthcoming*)
77 Sands Street, 6th Floor
Brooklyn, NY 11201

Tel: (718) 243-9323
Fax: (718) 243-9326
brett@iLawco.com
roberto@iLawco.com

*Attorneys for Plaintiff*